UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LESA T.,

                Plaintiff,

v.                                                5:17-CV-1215 (ATB)

COMM'R OF SOC. SEC.,

                Defendant.
_____

APPEARANCES:                               OF COUNSEL:

LAW OFFICES OF STEVEN R. DOLSON      STEVEN R. DOLSON, ESQ.
Counsel for Plaintiff
126 North Salina Street, Suite 3B
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.          DANIELLA M. CALENZO, ESQ.
OFFICE OF REG'L GEN. COUNSEL
REGION II
Counsel for Defendant
26 Federal Plaza - Room 3904
New York, NY 10278

ANDREW T. BAXTER, United States Magistrate Judge


**<u>DECISION and ORDER</u>**

Currently before the Court, is this Social Security action filed by Lesa T. ("Plaintiff")

against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to

42 U.S.C. § 405(g). This matter was referred to me, for all proceedings and entry of a final

judgment, pursuant to N.D.N.Y. General Order No. 18, and in accordance with the provisions of

28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1, and the consent of the parties.

(Dkt. Nos. 3, 4). The parties have each filed briefs (Dkt. Nos. 7 and 12) addressing the

administrative record of the proceedings before the Commissioner (Dkt. No. 6.)[1]  For the reasons

set forth below, the Commissioner's decision is AFFIRMED, and Plaintiff's complaint is

DISMISSED.

## I.      RELEVANT BACKGROUND

### A.      Factual Background

Plaintiff was born in 1961, making her 51 years old at the alleged onset date and 55 years

old at the date of the ALJ's decision.  Plaintiff reported graduating from high school.  Plaintiff

has past work as a bookkeeper.  At the initial level, Plaintiff alleged disability due rheumatoid

arthritis, osteoarthritis, arthritis in the cervical spine, and irritable bowel syndrome ("IBS").

### B.      Procedural History

Plaintiff applied for a period of disability and disability insurance benefits on August 21,

2014, alleging disability beginning February 1, 2013.  Plaintiff's application was initially denied

on January 9, 2015, after which she timely requested a hearing before an Administrative Law

Judge ("ALJ").  Plaintiff appeared at a hearing before ALJ William M. Manico on February 17,

2016, at which a vocational expert ("VE") also testified.  (T. 77-118.)  On July 18, 2016, the ALJ

issued a written decision finding Plaintiff was not disabled under the Social Security Act.  (T. 7-

32.)  On September 25, 2017, the Appeals Council denied Plaintiff's request for review, making

the ALJ's decision the final decision of the Commissioner.  (T. 1-6.)

---

[1] The Administrative Transcript is found at Dkt. No. 6.  Citations to the Administrative
Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein
will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing
system.

## C. The ALJ's Decision

In his decision, the ALJ made the following findings of fact and conclusions of law. (T. 12-27.) The ALJ found that Plaintiff last met the insured status requirements of the Social Security Act on June 30, 2015. (T. 12.) The ALJ determined that Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of February 1, 2013, through her date last insured. (*Id.*) The ALJ further found that Plaintiff had severe impairments including arthritis, IBS, degenerative disc disease ('DDD") of the cervical spine, hypertension, and obesity through the date last insured. (*Id.*) The ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 through the date last insured. (T. 16.) Specifically, the ALJ considered Listings 1.04 (disorders of the spine), 5.06 (inflammatory bowel disease), 5.08 (weight loss due to any digestive disorder), and 14.09 (inflammatory arthritis), as well as section 4.00 (cardiovascular system). (*Id.*) The ALJ then found that, through the date last insured, Plaintiff had the RFC to perform sedentary work, except she could only frequently reach, finger or feel and she required a regular work break approximately every two hours. (*Id.*) The ALJ determined, based on the testimony of the VE that Plaintiff was capable of performing past relevant work as a bookkeeper through the date last insured. (T. 27.) The ALJ therefore concluded that Plaintiff is not disabled. (T. 27.)

## D. The Parties' Briefings

### 1. Plaintiff's Brief

In her brief, Plaintiff argues that the ALJ's decision is not based in substantial evidence because the ALJ did not properly apply the treating physician rule regarding the opinion of

Douglas Rahner, M.D.[2] (Dkt. No. 7, at 2-10.)  Specifically, Plaintiff argues that the ALJ failed

to comprehensively set forth his reasons for not giving Dr. Rahner's opinion controlling weight

and failed to explicitly consider the requisite regulatory factors.  (*Id*. at 7-10.)  Plaintiff also

contends that if there was any ambiguity in the medical opinions, the ALJ was under a duty to

attempt to re-contact the respective doctor for clarification.  (*Id*. at 8-9.)

### 2.     Defendant's Brief

Defendant argues that the ALJ properly evaluated the opinion evidence, and that

substantial evidence supports the ALJ's RFC finding.  Defendant contends that the ALJ provided

explicit reasons for his determination as to the weight to be afforded to Dr. Rahner's opinions,

and that the ALJ's decision reflects implicit reasons for evaluation of the opinion evidence based

on consideration of the entire record.  (Dkt. No. 12, at 4-16.)  Defendant also argues that an

explicit consideration of each and every regulatory factor is not required where, as here, the

ALJ's reasoning and adherence to the regulations are clear.  (*Id*. at 13.)

## II.     RELEVANT LEGAL STANDARD

### A.     Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an

individual is disabled.  42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs*., 906 F.2d

856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if the

correct legal standards were not applied, or it was not supported by substantial evidence.  *See,*

*e.g., Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Johnson v. Bowen*, 817 F.2d 983, 986

(2d Cir. 1987).  "Substantial evidence" is evidence that amounts to "more than a mere scintilla,"

---

[2] The Court notes that throughout her brief, Plaintiff refers to Dr. Rahner as Dr. "Rabner" as does
the ALJ throughout his decision.  (Dkt. No. 7, at 7-8, 10; T. 13-14.)

and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian*, 708 F.3d at 417 (*citing Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971)). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.      Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability

to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## III.   ANALYSIS

### A.   Substantial Evidence from an Adequately Developed Record Supports the ALJ's Analysis of Dr. Rahner's Opinion and His RFC Determination

#### 1.   Applicable Law

##### a.   Treating Physician

The Second Circuit has long recognized the 'treating physician rule' set out in 20 C.F.R. § 404.1527(c). "'[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)). However, " . . . the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued

6

opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).

In deciding how much weight to afford the opinion of a treating physician, the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'" *Greek*, 802 F.3d at 375 (quoting *Selian*, 708 F.3d at 418). However, where the ALJ's reasoning and adherence to the regulation is clear, and it is obvious that the "substance of the treating physician rule was not traversed," no "slavish recitation of each and every factor" of 20 C.F.R. § 404.1527(c) is required. *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (citing *Halloran,* 362 F.3d at 31-32). The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant replacing the consideration of the treatment relationship between the source and the claimant. 20 C.F.R. §§ 404.1527(c)(1)-(6).

### b. RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis . . . ." A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, 11-CV-1386, 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *2)).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms,

including pain and descriptions of other limitations. 20 C.F.R. § 404.1545. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)). An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta*, 737 F. Supp. at 183; *Sullivan v. Sec'y of HHS*, 666 F. Supp. 456, 460 (W.D.N.Y. 1987)). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Trail v. Astrue*, 09-CV-1120, 2010 WL 3825629, *6 (N.D.N.Y. Aug. 17, 2010) (citing SSR 96-8p, 1996 WL 374184, at *7).

### c. Review of Medical Evidence

"An ALJ should consider 'all medical opinions received regarding the claimant.'" *Reider v. Colvin*, 15-CV-6517P, 2016 WL 5334436, at *5 (W.D.N.Y. Sept. 23, 2016) (quoting *Spielberg v. Barnhart*, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005)). "The ALJ is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion." *Greek*, 802 F.3d at 375 (citing *Burgess*, 537 F.3d at 131). In assessing a plaintiff's RFC, an ALJ is entitled to rely on opinions from both examining and non-examining State agency medical consultants because such consultants are qualified experts in the field of social security disability. *See Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); *Little v. Colvin*, 14-CV-0063, 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability

claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.") (internal quotation marks omitted).

### d. Developing the Record

It is well-settled that, because a hearing on disability benefits is a non-adversarial proceeding, the ALJ has an affirmative duty to develop the record, whether or not a plaintiff is represented. *Melville*, 198 F.3d at 51. Prior to March of 2012, the regulations provided that when the treating physician's report contained "a conflict or ambiguity" that must be resolved, the ALJ was required to "seek additional evidence or clarification" from that source in order to fill in any clear gaps before rejecting the doctor's opinion. *Rolon v. Comm'r of Soc. Sec.*, 994 F. Supp. 2d 496, 504-505 (S.D.N.Y. 2014) (citing, *inter alia, Correale-Englehart v. Astrue*, 687 F. Supp. 2d 396, 428 (S.D.N.Y. 2010); 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1) (2010)). This duty arose if the physician's report was "insufficiently explained, lacking in support, or inconsistent with the physician's other reports." *Id.*

Effective March 26, 2012, the Commissioner amended 20 C.F.R. § 404.1512 (e)(1) to remove former paragraph (e), together with the duty that it imposed on the ALJ to re-contact the treating physician under certain circumstances. *Lowry v. Astrue*, 474 F. App'x 801, 805 n. 2 (2d Cir. 2012) (citing How We Collect and Consider Evidence of Disability, 77 Fed. Reg. 10,651, 10,656 (Feb. 23, 2012) (codified at 20 C.F.R. § 416.912) (deleting former paragraph (e) and redesignating former paragraph (f) as paragraph (e)). The Court applies the section in effect when the ALJ adjudicated Plaintiff's claim. *Id.* The ALJ's decision in this case is dated July 18, 2016; thus, the new section applies.

The new section allows the ALJ to choose the appropriate method for resolving insufficiencies or inconsistencies, which is designed to afford adjudicators "more flexibility."

*Perrin v. Astrue*, 11-CV-5110, 2012 WL 4793543, at *3 n.3 (E.D.N.Y. Oct. 9, 2012) (citing How

We Collect and Consider Evidence of Disability, *supra*).  The ALJ must attempt to resolve the

inconsistency or insufficiency by taking one or more of the following approaches:

> (1) recontacting the treating physician or other medical source, (2) requesting additional existing records, (3) asking the claimant to undergo a consultative examination, or (4) asking the claimant or others for further information.

*Id*. (citing 20 C.F.R. §§ 404.1520b(c)(1)-(4), 416.920b(c)(1)-(4)).

Despite the duty to develop the record, remand is not required where the record contains

sufficient evidence from which the ALJ can assess the plaintiff's RFC.  *Covey v. Colvin*, 13-CV-

6602, 2015 WL 1541864, at *13 (W.D.N.Y. Apr. 6, 2015) (quoting *Tankisi v. Comm'r of Soc.*

*Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013)).  "Where there are no obvious gaps in the

administrative record, and where the ALJ already possesses a 'complete medical history,' the

ALJ is under no obligation to seek additional information in advance of rejecting a benefits

claim." *Rosa v. Callahan*, 168 F.3d 72, 79 n. 5 (2d Cir. 1999) (citing *Perez v. Chater*, 77 F.3d

41, 48 (2d Cir. 1996)).

### 2.  Relevant Medical Evidence

#### a.  Dr. Rahner's Treating Source Opinion

In November 2015, Dr. Rahner completed a check-box medical source statement, noting

Plaintiff's severe osteoarthritis in her finger joints, multilevel cervical disc disease, herniated

cervical disc with impingement, moderate-to-severe osteoarthritis in the bilateral knees on x-ray,

tenosynovitis, and persistent dizziness.  (T. 753-55, 757.)  He opined that Plaintiff could

occasionally lift and carry up to 10 pounds; sit for three hours at a time for a total of four hours;

stand for 20 minutes at a time for a total of one hour; walk for two hours at a time for a total of

three hours; occasionally reach, handle and push/pull; frequently feel; occasionally-to-frequently

finger; occasionally use her feet for the operation of foot controls; occasionally balance and climb stairs and ramps; and never climb ladders or scaffolds, stoop, kneel, crouch, or crawl. (T. 753-757.) She could never tolerate unprotected heights; occasionally tolerate moving mechanical parts and operating a motor vehicle; frequently tolerate extreme cold and vibrations; and continuously tolerate humidity, wetness, pulmonary irritants, and extreme heat. (T. 757.) Dr. Rahner also opined that Plaintiff could not use public transportation because it would require walking for too great a distance. (T. 758.)

### b. Dr. Ganesh's Consultative Opinion

In December 2014, Plaintiff underwent a consultative examination by Kalyani Ganesh, M.D., who noted Plaintiff had a normal gait and stance, she could not walk on her heels and toes or squat, she had braces for both legs but her gait appeared to be quite normal without the braces, she needed no help changing for the exam or getting on and off the exam table, and she was able to rise from a chair without difficulty. (T. 626.) She had full range of motion in the cervical spine, but was limited in the lumbar spine, and she had negative straight leg raising testing bilaterally, full range of motion in the upper and lower extremities, stable and non-tender joints, full strength in the upper and lower extremities, intact hand and finger dexterity, and full grip strength bilaterally. (T. 627.) Dr. Ganesh diagnosed rheumatoid arthritis and IBS, and indicated that, based on the evaluation, no limitations were noted. (T. 627-28.)

### 3. Analysis

Plaintiff argues that the ALJ did not properly apply the treating physician rule regarding Dr. Rahner's opinion because the ALJ failed to comprehensively set forth reasons for not affording this opinion controlling weight and failed to explicitly consider the requisite regulatory factors. (Dkt. No. 7, at 2-10.) Plaintiff also contends that if there was any ambiguity in the

medical opinions, the ALJ was under a duty to attempt to re-contact the respective doctor for clarification. (*Id.* at 8-9.) The Court finds these arguments unpersuasive for the following reasons.

The ALJ's decision reflects an extensive and detailed review of Plaintiff's testimony and treatment history, as well as a reasoned analysis of the opinion evidence. (T. 17-26.) Within his RFC analysis, the ALJ explained how the opinion evidence indicated Plaintiff's continuing ability to perform work activity. (T. 19.) The ALJ summarized Dr. Ganesh's findings and noted that, contrary to Plaintiff's allegations of hand pain, her fine hand and finger dexterity were intact, there was no redness or swelling of the hands noted, she reported being able to do all fine motor activities, and grip strength was 5/5 bilaterally. (T. 19, 627.) The ALJ also considered Dr. Rahner's findings and noted that, although he found significant functional limitations, they did not necessarily restrict Plaintiff from all work activity, particularly in light of the ALJ's conclusion that she retained significant capabilities to perform activities of daily living independently. (T. 19-20.) The ALJ also concluded that treatment notes failed to support that Plaintiff was disabled. (T. 20.) Further, the ALJ pointed out Dr. Rahner's inconsistent findings, in the same functional analysis, that Plaintiff would have difficulty using public transportation if it required her to walk for too great a distance, and that she could walk for three hours in an eight-hour workday and walk two hours continuously without interruption. (T. 20, n. 3, 754.)

In assessing the opinion evidence, the ALJ afforded less weight to Dr. Ganesh's opinion and partial weight to Dr. Rahner's opinion to the extent it was consistent with the ALJ's RFC determination. (T. 26.) The ALJ went on to provide sufficient explanation for the weight afforded to both of these opinions. (*Id.*) For example, the ALJ indicated that the objective evidence reflected Plaintiff's back condition had deteriorated subsequent to the consultative

12

examination with Dr. Ganesh. (*Id.*) The ALJ also noted that, although Plaintiff was able to engage in significant activities such as caring for her special-needs child and disabled husband, she did experience difficulties doing so, and had sought significant treatment due to her alleged pain. (*Id.*) The ALJ stated that "[i]ndeed, Dr. Ra[h]ner's functional findings one year later reflect a reduction in functioning due to her pain" but that Dr. Rahner's RFC findings were inconsistent with evidence showing that Plaintiff was capable of performing more demanding physical activities. (*Id.*) The ALJ noted that Dr. Rahner himself identified many activities Plaintiff could perform on her own, and that her reported activities of daily living (including the ability to drive on her own) reflected she could function independently. (T. 26.) As discussed above, the ALJ also pointed to the inconsistencies in Dr. Rahner's opinion regarding Plaintiff's ability to walk for up to two hours continuously, and her perceived difficulty in using public transportation if it required her to walk for too great a distance. (T. 20, n. 3, 754.)

The ALJ concluded Plaintiff's allegations were not fully consistent with the medical evidence of record, pointing to both her testimony and the evidence reflecting her reported activities of daily living, including attending to her special-needs child, who "requires constant care," and her disabled husband. (T. 25, 26, 82, 228, 767, 818). *See, e.g.*, *Tricarico v. Colvin*, 681 F. App'x 98, 100–01 (2d Cir. 2017) (ALJ appropriately considered plaintiff's daily activities, including child care, in assessing medical opinion evidence and formulating RFC); *Michelle B. v. Comm'r of Soc. Sec.*, No. 3:18-CV-171 (ATB), 2019 WL 464975, at *9 (N.D.N.Y. Feb. 6, 2019) ("the activities that plaintiff admitted to performing on a daily basis [including child care] are not inconsistent with the ability to perform the work that the ALJ found was available for her to perform"); *Krull v. Colvin*, 669 F. App'x 31 (2d Cir. 2016) (the ALJ properly considered the ability to care for children and perform daily activities when weighing treating source opinion).

The ALJ also noted the report that Plaintiff's ankle felt great when using her brace, and treatment notes reflecting that she had a mild form of rheumatoid arthritis that was controlled without medication. (T. 27, 408, 412.)

The ALJ's decision includes detailed consideration of the medical opinions and related treatment notes, consistent with the requirements of 20 C.F.R. § 404.1527. (T. 17-27.) Further, the ALJ adequately considered the various limitations (and lack thereof) identified in the medical opinions, and sufficiently explained the specific weight he afforded to each opinion. (T. 19-20, 26.) The ALJ was responsible for reviewing all of the medical and other evidence before him, resolving any inconsistencies therein, and making a determination consistent with the evidence as a whole. *See Bliss v. Colvin*, 13-CV-1086, 2015 WL 457643, at *7 (N.D.N.Y., Feb. 3, 2015) ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such."); *accord Petell v. Comm'r of Soc. Sec.*, 12-CV-1596, 2014 WL 1123477, at *10 (N.D.N.Y., Mar. 21, 2014). In formulating Plaintiff's RFC, the ALJ was not required to accept every limitation in Dr. Rahner's opinion or completely mirror Dr. Ganesh's finding of no limitations. *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."); *Zongos v. Colvin*, 12-CV-1007, 2014 WL 788791, at *9 (N.D.N.Y. Feb. 25, 2014) (finding that it was within the ALJ's discretion to afford weight to a portion of a treating physician's opinion, but not to another portion).

Further, although Plaintiff argues that the ALJ failed to explicitly consider the requisite regulatory factors when assessing Dr. Rahner's opinion and deciding to afford it less than

controlling weight, the ALJ's decision indicates otherwise. (Dkt. No. 7, at 8-10; T. 19-20, 26.)

For example, within his decision, the ALJ identified Dr. Rahner as Plaintiff's treating physician

and noted he had diagnosed her with arthritis in her hands and knees and DDD of the cervical

spine. (T. 13, 19, 753-57.) The ALJ also referred to treatment notes from Dr. Rahner (as well as

Plaintiff's other providers at Moravia Health) throughout the decision. (T. 14, 24-25, 817-19,

833-34, 848-49, 851-553, 856-58.) Most importantly, the ALJ explained that he had not fully

adopted Dr. Rahner's opinion because the extent of many limitations that the treating doctor

found were more restrictive than what Plaintiff was capable of doing, including her activities of

daily living. (T. 26.) *See Saxon v. Astrue*, 781 F. Supp. 2d 92, 102 (N.D.N.Y. 2011) ("The less

consistent an opinion is with the record as a whole, the less weight it is to be given.") (citing

*Stevens v. Barnhart*, 473 F. Supp. 2d 357, 362 (N.D.N.Y. 2007)); *Otts v. Comm'r of Soc. Sec.*,

249 F. App'x 887, 889 (2d Cir. 2007) (noting that an ALJ may reject an opinion from a treating

physician "upon the identification of good reasons, such as substantial contradictory evidence in

the record"). The ALJ also noted he had considered the opinion evidence in accordance with the

requirements of 20 C.F.R. § 404.1527 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p. Although the

ALJ may not have "slavishly" listed each of the regulatory factors when assessing the treating

physician's opinion, his analysis of the evidence of record and his overall decision indicate he

adequately considered the factors and supported his reasoning with sufficient analysis.

Plaintiff also argues that the ALJ was under a duty to re-contact the respective doctor for

clarification if there was any ambiguity in the medical opinions. (Dkt. No. 7, at 8-9.) However,

the ALJ had sufficient information to assess the medical opinion evidence and determine

Plaintiff's RFC. The record included extensive treatment notes and there were no apparent gaps

that precluded the ALJ from making an ultimate finding regarding disability.[3] (T. 282-624, 630-751, 765-871.) *See Janes v. Colvin*, 15-CV-1518, 2017 WL 972110, at *3 (N.D.N.Y. Mar. 10, 2017) ("the ALJ need not seek additional information from a given provider when the record contains notes from the provider that are adequate for the ALJ to determine the claimant's disability.") (citing *Merritt v. Colvin*, 142 F. Supp. 3d 266, 270 (N.D.N.Y. 2015)).

For the reasons stated above, the ALJ's analysis of the opinion evidence and the resulting RFC are supported by substantial evidence. The ALJ did not fail to adequately develop the record. Remand is therefore not required on these grounds.

**ACCORDINGLY**, it is

**ORDERED** that the Commissioner's decision is **AFFIRMED**, and further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED,** and that judgment be entered for the **DEFENDANT.**

Dated: March 15, 2019

Andrew T. Baxter
U.S. Magistrate Judge

---

[3] The ALJ also made reasonable efforts to ensure that the administrative record was complete. For example, at the administrative hearing, the ALJ discussed Plaintiff's recent medical treatment at length, and stated that he would request updated records from her providers. (T. 105-15.) It appears that the medical records in Exhibits 20F, 21F, and 22F were added to the record following the administrative hearing. (T. 276-81, 765-871.)